**Willie Lee DAWKINS et al., Appellants,**

v.

**John N. MITCHELL, Attorney General of the United States, et al.**

**No. 24662.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1970.

Decided Oct. 9, 1970.

Mr. Landon G. Dowdey, Washington, D. C., for appellants.

Mr. Nathan Dodell, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U.S. Atty., Joseph A. Hannon and John A. Terry, Asst. U. S. Attys., were on the memorandum in opposition to appellants' motions, for appellees.

Before WRIGHT, ROBB and WILKEY, Circuit Judges.

PER CURIAM:

Appellants sued in the District Court for the District of Columbia to enjoin the appellees, the Attorney General of the United States and the Director of the Federal Bureau of Investigation, from enforcing a warrant issued under 18 U.S.C. § 1073, Flight to Avoid Prosecution or Giving Testimony, commonly referred to as the Fugitive Felon Act. The warrants were issued in Louisiana against appellants Dawkins and Schoop for alleged flight from prosecution under the Louisiana so-called "Criminal Anarchy" statute.[1] The District Court dismissed the action on the ground of lack of jurisdiction. On this appeal, appellants asked for summary reversal of the District Court's action and for an injunction pending final appeal on the merits. These motions are herewith denied.

I.

First as to appellant Williams, we are unable to understand on what valid ground he is in the case at all. Appellants Dawkins and Schoop contend that they are unable to carry on their political activities as Black Panthers so long as they are subject to apprehension under the Fugitive Felon Act, and Williams, as a local officer of the Black Panthers, executed the affidavit made the basis of appellants' action in the District Court. But Williams appears not to have been in Louisiana, to have no personal knowledge of events there, it does not appear that he is charged with any offense by the State of Louisiana, or the United States, and we agree with the District Court holding that Williams has no standing in the case.

II.

At this moment the other two appellants here are in a double and triple fugitive status. Dawkins is a fugitive from the Louisiana state charge and a fugitive from the federal complaint and warrant under § 1073 charging unlawful flight to avoid prosecution. Schoop is trebly a fugitive, a fugitive from the same two charges as Dawkins, plus being a fugitive from a bench warrant issued by the United States District Court for the District of Columbia on 25 September 1970 calling on Schoop to answer to an indictment charging him with assault on a member of the police force.[2]

Appellants through their counsel have filed pleadings in this court and invoked our assistance to restrain the Attorney General of the United States and the Director of the Federal Bureau of Investigation. If the ruling of this court were favorable to appellants' arguments, appellants might very well appear from hiding and resume their normal activities, thanks to a protective order of this court. But, if the ruling of this court were adverse to appellants, if their requested relief were denied, then there is no assurance whatsoever that appellants will follow the command of the law as enunciated by this court. We do not know that appellants physically are even within the jurisdiction of the District of Columbia. In filing their pleadings in the District Court appellants originally stated "Address withheld." Later, to meet the requirements of the clerk's office, they supplied a street address, which is a

---

1.  La.Rev.Stat. 14:115.

2.  22 D.C.Code § 505(a).

headquarters of the Black Panthers, not their residence.

In truth and in fact appellants Dawkins and Schoop have not subjected themselves to the jurisdiction of this court. They have appeared by counsel only, and are willing to enjoy the fruits of any legal victory, but it is not apparent that they are willing to accept an adverse decree, and there is certainly no guarantee that they can be compelled to do so. As to how their pleas should be treated, although of course appellants have not been convicted of any charge here, we find a pertinent rationale in those cases in which the appellants have escaped confinement or jumped bail after conviction.

Only this past Term the Supreme Court had occasion to consider this problem in Molinaro v. New Jersey.[3] Molinaro appealed from a conviction in the New Jersey state courts, and while the appeal was pending jumped bail. The Supreme Court said:

> *The State considers him a fugitive from justice. Under these circumstances we decline to adjudicate his case.* The Court has faced such a situation before * * *. In *Smith* [Smith v. United States, 94 U.S. 97, 24 L.Ed. 32] the case was dismissed at the beginning of the following Term. * * * In *Bonahan,* [Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854] the case was stricken from the docket on the last day of the Term in which it arose.

In *Molinaro* the Supreme Court went further than it had in previous similar cases, significantly saying:

> While such an escape does not strip the case of its character as an adjudicable case or controversy, *we believe it disentitles the defendant to call upon the resources of the Court* for determination of his claims. * * * The Court has the authority to dismiss the appeal on this ground. The dismissal need not await the end of the Term or the expiration of a fixed period of time, but should take place at this time.

■■ The Supreme Court's reasoning in *Molinaro* applies to the case at bar. While of course the appellants here have not been convicted, either of the federal or state charge, yet until the appellants are willing to submit their case for complete adjudication, win or lose, they are "disentitle[d] * * * to call upon the resources of the court for determination of [their] claims." [4]

A similar situation occurred in Eisler v. United States.[5] The petitioner jumped bail and fled the country after certiorari had been granted and his case submitted on the merits. While the majority of the Court was content to dispose of the matter by removing the petitioner's case from the docket, Justice Frankfurter and Chief Justice Vinson favored dismissing the writ of certiorari, as the Court subsequently did in *Molinaro*.[6]

---

3. 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970).

4. For this same reason, the District Court's determination not to convene a statutory three-judge court, as otherwise might have been required by 28 U.S.C. § 2282, was proper. In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962) the Supreme Court stated:

> When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least

formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute.

Without reaching the question of the substantiality of the constitutional issues presented, we are of the view that by withholding their address while at the same time admitting their fugitive status, appellant's complaint failed to allege "a basis for equitable relief."

5. 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949).

6. *See also* McKinney v. United States, 403 F.2d 57 (5th Cir. 1968) ; United States

At oral argument appellants' counsel protested that for appellants to place themselves physically within the jurisdiction of this court would be in effect to moot their entire challenge to the constitutionality and/or enforceability of § 1073 against them in this case. Not so. Appellants could easily have filed this action, advanced every legal argument they have urged now, asked not for a prohibition against the Attorney General and the Director of the Federal Bureau of Investigation seeking them out as fugitives (one of the duties imposed by law upon these officials), but asked for a similar injunctive order restraining those same two officials from either removing the appellants from the District of Columbia to Louisiana to answer the federal charge of unlawful flight under § 1073 or from turning appellants over to the local authorities in the District of Columbia for extradition under the Constitution to answer in Louisiana state court the charges filed there.

Immediately after filing such a proceeding, which could have been this same proceeding with the modifications suggested, and which, if appellants were upheld on either of several of their legal theories, would afford appellants complete protection, appellants could have walked into the United States Marshal's office and presented themselves to answer the fugitive warrant, called the Marshal's attention to their case already pending in the District Court, and been speedily set free on bail. Then the District Court, and perhaps subsequently this court, could have adjudicated the legal issues raised here, with the assurance that the appellants were ready to abide by the decision, win or lose. As it is, appellants have attempted to invoke only half our jurisdiction, *i. e.*, the winning side.

For the reasons stated above the action of the District Court dismissing appellants' action is hereby

Affirmed.

v. Press, 401 F.2d 499 (3rd Cir. 1968); United States v. Dawson, 350 F.2d 396 (6th Cir. 1965); Irvin v. Dowd, 251 F.

2d 548 (7th Cir. 1958); Stern v. United States, 249 F.2d 720 (2d Cir. 1957).