Neal **RUETZ**, Petitioner-Appellant,

v.

Russell E. **LASH**, Warden,
Respondent-Appellee.

No. 73–1803.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1974.

Decided July 22, 1974.

Frederic Weber, Chicago, Ill., for petitioner-appellant.

Theodore L. Sendak, Atty. Gen., A. Frank Gleaves, III, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and MATTHES, Senior Circuit Judge.*

MATTHES, Senior Circuit Judge.

This appeal from an order of the district court denying habeas corpus relief poses a unique question—whether the escape of appellant following his state conviction constituted a deliberate bypass of state remedies so as to disentitle him to relief under the equitable principles governing habeas corpus.

In May of 1971, appellant, Neal Ruetz, was convicted by a jury in the LaGrange County, Indiana, Circuit Court of first degree murder. He was sentenced on June 3, 1971, to life imprisonment. At sentencing, appellant indicated his desire to file a motion to correct errors, a state procedural requisite to filing an appeal. The trial judge promptly instructed Ruetz's trial attorney to file such a motion on his client's behalf within the statutory 60 day period. Defense counsel's request that appellant be allowed to remain in LaGrange County to assist in the preparation of the motion was denied, and appellant was remanded to the custody of the sheriff for transportation to the Indiana State Prison.

Two days after sentencing, appellant "walked away from the LaGrange County Jail through an open garage door." State ex rel. Ruetz v. LaGrange Circuit Court, 281 N.E.2d 106, 108 (Ind.1972). He was apprehended and returned to LaGrange County more than three months later, on September 27, 1971. In the meantime, his lawyer timely filed a motion to correct errors. The trial court did not act upon the motion until September 30, 1971, after Ruetz had been returned to custody. At that time, in the presence of appellant and his attorney, the motion was overruled. The court further ordered that "the defendant having been a fugitive from justice during the statutory period for filing motion to correct errors in this cause he has waived his right to appeal, and his request for an appeal is now denied by the court."

Appellant sought a writ of mandamus from the Supreme Court of Indiana ordering the trial court to allow appellant to perfect an appeal. The state supreme court denied relief, saying:

"In the case at bar the relator was not within the jurisdiction of the court at the time his motion to correct errors was filed. The time permitted by the rules of this Court for the filing of such a motion had long expired at the time the relator was captured and returned to the jurisdiction of the court. Under the above authority, the relator had no standing in court during the period in which the motion to correct errors could be filed. By so voluntarily absenting himself from the court's jurisdiction, the relator has effectively and knowingly waived his right to a timely appeal to this Court."

State ex rel. Ruetz v. LaGrange Circuit Court, 281 N.E.2d 106, 107 (Ind.1972).

---

\* Senior Circuit Judge M. C. Matthes of the Eighth Circuit is sitting by designation.

A vigorous dissent was filed by Justice DeBruler, arguing that the record did not show a voluntary, knowing, and intelligent waiver by appellant of his constitutional and statutory right to appeal. In addition, the dissent asserted, the supposed rationale for the "escape rule"—the nonenforceability of a court order against a fugitive—was inapplicable to this case since Ruetz was back in court at the time the trial court ruled on the motion to correct errors. *Id.* at 107–109.

On January 5, 1973, appellant filed a petition for habeas corpus in the United States District Court for the Northern District of Indiana. The district court, however, refused to consider appellant's claims on the ground that appellant had forfeited his right to habeas corpus relief by deliberately bypassing his state remedies. While acknowledging that "[t]he State court's determination does not 'bar independent determination of the question [of waiver] by the federal courts,' " the court concluded that "this is one of the few types of cases in which the voluntariness of petitioner's waiver has been held to be determinable by the petitioner's actions without an inquiry into the subjective intent of the petitioner himself." In *so holding, the district court relied upon a 1958 decision of this circuit stating that an escape by a defendant during the time allotted for filing a motion for a new trial constituted an abandonment of the remedy.* Irvin v. Dowd, 251 F.2d 548, 553 (7th Cir. 1958), rev'd on other grounds, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).

As the district court recognized, "waiver affecting federal rights is a federal question." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). Nevertheless, the district court, in the instant case, concluded that the act of escape, by definition, constituted waiver under the federal standard as well as under the state standard. The district court was of the opinion that this result was dictated by our case of Irvin v. Dowd, *supra.* As Irvin v. Dowd concerned the same Indiana "escape rule" at issue in the present case and as the procedural history is rather complicated, we pause to describe the case in some detail.

On January 18, 1956, Leslie Irvin escaped following his conviction for murder in the Gibson County, Indiana, Circuit Court. On the day following his escape, his counsel timely filed a motion for a new trial. The motion was promptly overruled on the ground that Irvin was a fugitive. Irvin was apprehended after the expiration of the period for filing a motion for new trial. He appealed from his conviction, challenging only the overruling of his motion for new trial. The Supreme Court of Indiana affirmed, stating:

> "If a prisoner escapes he is not entitled during the period he is a fugitive to any standing in court or to file any plea or ask any consideration from such court.
>
> \*     \*     \*     \*     \*     \*
>
> "Since appellant had no standing in court at the time he filed a motion for a new trial the situation is the same as if no motion for a new trial had been filed, or he had voluntarily permitted the time to expire for such filing."

Irvin v. State, 139 N.E.2d 898, 901 (Ind.1957).

Although concluding that "[n]o error could have been committed in overruling the motion for a new trial under the circumstances," the court proceeded to dispose of the contentions made in Irvin's motion for a new trial.

When Irvin applied for federal habeas corpus, the district court found

> "that the petitioner by his own unlawful act in escaping \* \* \* and remaining a fugitive \* \* \* during the statutory period when his time for filing a motion for new trial expired, \* \* \* forfeited the right to utilize the adequate corrective processes available to him in the courts of the State of Indiana and \* \* \* failed to exhaust the remedies available to

him \* \* \*, which is an absolute bar to relief by habeas corpus in this court, and his petition must, therefore, be dismissed."

Irvin v. Dowd, 153 F.Supp. 531, 535 (N. D.Ind.1957).

On appeal, this circuit agreed with the district court's analysis and affirmed, saying: "Defendant did not exhaust his remedies under the law of Indiana. By his escape he abandoned the remedy to which his attorneys resorted." Irvin v. Dowd, 251 F.2d 548, 553 (7th Cir. 1958).

The United States Supreme Court granted certiorari and held that the doctrine of exhaustion of state remedies was not applicable since the Indian Supreme Court had proceeded to an adverse determination of Irvin's constitutional claims. Accordingly, the case was reversed and remanded for consideration of Irvin's petition on the merits. Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).[1]

Four years later in Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed. 2d 837 (1963), the United States Supreme Court limited the doctrine of exhaustion of state remedies "to failure to exhaust state remedies still open to the habeas applicant at the time he files his application in federal court." Under the teachings of Fay v. Noia, Irvin had exhausted his state remedies even if the Indiana Supreme Court had not reached the merits of his constitutional claims.

It is clear that the statement of this circuit in Irvin v. Dowd that "[b]y his escape he abandoned the remedy" cannot be separated from the now discredited holding in that case that Irvin failed to exhaust his state remedies.

In fairness, it should be noted that Irvin's motion for a new trial was overruled while he was a fugitive, whereas appellant's motion to correct errors was overruled in his presence.

Fay v. Noia controls, not only with regard to the doctrine of exhaustion of state remedies, but also with regard to the principles governing a determination of what constitutes a "deliberate by pass" of state remedies. In the latter respect, Mr. Justice Brennan recognized a limited discretion in the federal judge to deny habeas corpus relief to an applicant who has deliberately bypassed the orderly procedure of the state courts. 372 U.S. at 438, 83 S.Ct. at 849. But he cautioned:

"[W]e wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. \* \* \* At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner."

372 U.S. at 439, 83 S.Ct. at 849.

And "[e]ach case must stand on its facts." 372 U.S. at 440, 83 S.Ct. at 849.

---

1. Upon remand, this circuit retained jurisdiction and decided the constitutional claims adversely to Irvin. Irvin v. Dowd, 271 F.2d 552 (7th Cir. 1959). The United States Supreme Court again granted certiorari and again reversed, finding Irvin's trial lacking in due process. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

A *per se* rule, as applied by the district court to the facts of this case, is completely at odds with the above stated principles.

Once the *per se* rule is discarded, as it must be, and the individual circumstances of the case examined, it becomes apparent that appellant, by his escape, did not voluntarily and knowingly relinquish his right to appeal. We reach this conclusion with some assurance because of the lengthy transcript of the proceedings on sentencing where appellant expressly stated, in response to questions by the trial court, his intention to file a motion to correct errors, and in the event such motion was denied, his intention to prosecute an appeal. Under these circumstances, we are not persuaded to hold that appellant deliberately bypassed the orderly procedure of the Indiana courts.

Since we hold that appellant has not deliberately bypassed his state remedies, the normal procedure would be to remand the case to the district court for an evidentiary hearing on the allegations in his petition. In the present case, however, as in Macon v. Lash, 458 F.2d 942, 949, 950 (7th Cir. 1972), there appears to be no need for such a hearing as the undisputed facts reveal the correctness of appellant's contention that he is entitled to a direct appeal from his conviction.

Indiana statutory law has made an appeal from a state conviction in a criminal case a matter of right. Burns' Ind.Stat.Ann. § 9–2301, IC 1971, 35–1–47–1 (1956). This being so, the scheme of appellate review must conform to fourteenth amendment requirements of equal protection and due process. Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Macon v. Lash, *supra*, 458 F.2d at 949.

As Mr. Justice Frankfurter stated in his concurring opinion in the *Griffin* case:

"[N]either the fact that a State may deny the right of appeal altogether nor the right of a State to make an appropriate classification, based on differences in crimes and their punishment, nor the right of a State to lay down conditions it deems appropriate for criminal appeals, sanctions differentiations by a State that have no relation to a rational policy of criminal appeal or authorizes the imposition of conditions that offend the deepest presuppositions of our society."

351 U.S. at 21–22, 76 S.Ct. at 592.

The Supreme Court has determined that it is not a denial of due process for a state court to dismiss an appeal on the ground that the appellant has escaped and become a fugitive from justice. National Union v. Arnold, 348 U.S. 37, 43, 75 S.Ct. 92, 99 L.Ed. 46 (1954); Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897). The Supreme Court, itself, has taken such action on many an occasion, *see* United States v. Campos-Serrano, 404 U.S. 293, 294 n. 2, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949); Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1877); Smith v. United States, 94 U.S. 97, 24 L.Ed. 115 (1876), as have the courts of appeals. *See, e. g.,* Van Blaricom v. Forscht, 490 F.2d 461 (5th Cir. 1974); United States v. Swigart, 490 F.2d 914 (10th Cir. 1973); Brinlee v. United States, 483 F.2d 925 (8th Cir. 1973); Hitchcock v. Laird, 456 F.2d 1064 (4th Cir. 1972); United States v. Tremont, 438 F.2d 1202 (1st Cir. 1971); Johnson v. Laird, 432 F.2d 77 (9th Cir. 1970); United States v. Press, 401 F.2d 499 (3d Cir. 1968); United States v. Dawson, 350 F.2d 396 (6th Cir. 1965); Stern v. United States, 249 F.2d 720 (2d Cir. 1957, cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958); *cf.* Dawkins v. Mitchell, 141 U.S.App.D.C. 213, 437 F.2d 646 (1970).

The rationale behind such dismissals is that the order and judgment may never be enforced because the appellant, by escaping, has placed himself beyond the

control of the court. *See* 5 Wharton's Criminal Procedure § 2249 (1957); 18 Geo.Wash.L.Rev. 427, 428, 429 (1950).

In none of the cases cited above had the appellant been returned to the jurisdiction of the court before the appeal was dismissed. Indeed, many of the courts, in anticipation or hopes of the appellant's return, provided a grace period before actually dismissing the case.

Appellant's motion to correct errors, a requisite to filing an appeal, was timely filed. No action was taken thereon until appellant had been returned to the jurisdiction of the court. His request for an appeal only then was denied. Under this circumscribed set of facts, we are unable to discern any rational basis for the court's action.[2]

Accordingly, the judgment of the district court is vacated and the case is remanded to that court for the entry of an appropriate order discharging petitioner from custody unless within a reasonable time to be fixed by the district court the State of Indiana provides him an appeal on the merits to the Supreme Court of Indiana from his conviction.

It is so ordered.

2. Escape from a place of detention under the jurisdiction of the state department of correction is punishable as a felony or misdemeanor. Burns' Ind.Stat.Ann. § 10–1809 (Supp.1973), IC 1971, 35–21–8–1. Appellant was never prosecuted under this statute.